Good morning. It's Country Mutual v. Hilltop View. For the appellant, Mr. Schmott and Mr. Hadden. Did I pronounce that correctly? Yeah. And for the appellee, Mr. Wilderson. May I have your seat? Good morning and may it please the Court. I'm Charles Hadden. I represent Country Mutual. A party cannot be held in contempt for failing to comply with an order that is non-final, unenforceable, and doesn't expressly require the party to do something. But that's exactly what happened here. And a party cannot be held in contempt for willfully failing to comply with an order that it reasonably believed that it was not disobeying and where it did not act confirmation. But that's also what happened here. Now, Country was held in indirect civil contempt of two sets of orders. For not making payments. The October orders, which the Court is somewhat familiar with from having dealt with this case previously. That's the one where the order said that Country is responsible for the insurance defense of an underlying suit against it. A war suit. That is the suit that was up on appeal previously. And that's the one where the Court held that part of the order was reversed. The second set of orders are the so-called February orders where they say that Country is responsible for the insurance legal fees in the coverage declaratory judgment action. Basically, we are paying to litigate. Country is paying us to litigate it and paying their counsel to litigate it. Can I ask you a question right there before you go on? Yes. I think I know the answer, but I want to ask you. In declaratory judgment actions for coverage, am I correct that ordinarily everybody pays their own fees unless the insured can show that they were denied coverage vexatiously? Is that right? Yes. There is a statute that allows for fee shifting, Section 155 of the Insurance Code, and there has to be a finding of vexatiousness and unreasonableness. Right. And absent that, if there's a good faith issue about coverage, everybody else pays their own fees? Absent a finding of vexatious and unreasonable conduct, yes, everyone pays their own fees. Before Judge McMillan ordered payment of the coverage litigation fees, was there proof of vexatiousness and unreasonableness? There was no hearing in which evidence was taken. There was no finding in the February orders of that. There was nothing about vexatiousness and unreasonableness. We made that point to the judge at the contempt hearing that that finding hadn't been made. It was one of the reasons we thought that the order wasn't complete yet, among other things. And has there ever been a final decision on the coverage action? No, the coverage action is still proceeding. Two days from now, we have an omnibus summary judgment motion with respect to the umbrella policy, dealing with all the remaining defenses and with the Section 155 claims that the insurers have made. So that's taking place this Friday. And so that we can narrow the scope of the issue here, the contempt order that's at issue is specific to the country's nonpayment of the legal costs contemplated by the February 2013 orders, because that's what was requested in the petition for contempt finding, even though the trial court's order also found a willful failure to comply with the October 26, 2012 order. Right? Yeah, let me give you the background on that. The petition for contempt asked that the country be found in contempt of the February orders. And the entire hearing on that was based on that. The order itself came out, and the proposed order said, in contempt of the October orders and the February orders. And we objected to that, but the judge entered the order as it had been proposed by the insurers and said both of those. The fees were awarded from the time of the February order through the date of the contempt. But those fees, there were other things that were going on in the case of depositions. There was the appeal to this court. There were other legal fees that were being incurred unrelated to the contempt during that period of time. So the country was held in contempt for failing to comply with the October orders as well as the February orders. But the actual remedy... But defendants didn't ask for that in the petition. They did not. We were worried that they might ask for that at the hearing, but they didn't. But then when the proposed order came out, we had talked about, do we need to have a witness there at the hearing with us? And we decided, well, they hadn't asked for it, so we wouldn't do it. And we would say, wait, this is a surprise to us, and we need to have a separate hearing for that. So no, that did not take place before the contempt order was issued. And just taking the court's contempt order as it's written, finding that there was a willful failure to obey the court's October 26, 2012 orders, the October 26, 2012 orders simply established the duty to defend. So what was the contemptuous conduct that the court found in regards to those orders? The insurance presented us with a demand for payment after they secured that order. And we said, that's not a final enforceable order. We don't have anything to pay yet. We asked them to join us in a Rule 304A finding, obtaining that so we could take it off. But we didn't think that there was anything that it required us to do. Well, that litigation was ultimately stayed anyway, right? The underlying litigation was stayed. The coverage litigation proceeded. Basically, what happened is that the appeal went up to this court, and the court affirmed part of it on the political stand, but then reversed the part that said that we had a duty to defend or that we would respond. Because there were other issues they could have raised but hadn't been listed. The seven that are going to be heard on Friday in Schuyler County. So the case was still continuing, and basically, in our view, we understood the order, and we think if you read the order, it doesn't tell us to pay anything. You can't disobey an order that doesn't require you to do something. And that order just says, you are responsible for those fees. It's like a finding of liability without a finding of damages. And there's a Lamar Whitecoat case that we cited in our brief. It says exactly that. It talks about five or six cases, including the U.S. Supreme Court, the 7th Circuit case, the Illinois Appellate Court case, it all came to that same conclusion that where there's an award of fees, a determination of fees are owed, but no determination of the amount or the reasonableness. It's not a final order. It's a finding of liability without damages. It doesn't create rights. It doesn't require anyone to do anything as a result until these other steps are taken. So the order that we're accused of disobeying, with respect to the underlying case, it didn't require us to do anything. It didn't say pay. It didn't say pay when. It didn't say pay how much. It didn't say this amount is reasonable. Ultimately, when the February orders came out, the judge said, well, I'm going to help you out here. I'm not going to take up the issue of the defense fees, the past defense costs. So the judge herself realized the second step was required, the taking up of the issue. So the order itself doesn't require that without something more. And the order itself didn't have a 304A finding. It's a claim in the litigation. It disposed of fewer than all the claims in the litigation, so 304A was required for that. Well, excuse me. Now, are you getting to the February orders? I'm starting with the October orders, but the same thing is true about February orders. So let's just, if you would, just take that last argument in regards to a 304A finding necessary in order for the February orders to be capable of resulting in a contempt finding. Because as I understand your brief, the argument in the brief, it's that the language in 304A in regards to a judgment's enforceability would dictate whether or not a court's order could later subject a party to contempt for a failure to comply with that order. Let's talk about the realm of discovery orders. Discovery orders are non-final orders. If an individual wishes to appeal, they perhaps have to take a friendly contempt finding in order to get it before the appellate court, true? Justice Harris, that's exactly the point that I made. We didn't want to be in a position of saying, oh, we never have to comply with an order until there's a 304A, because that's not the way things work. That's not what the statute or the Supreme Court rule requires. It's only orders that are subject to 304A. The insurers have a claim in the litigation for their attorney's fees in the coverage action. It's part of their counterclaim in their third amendment counterclaim. So when the court awarded attorney's fees in the February order, she was essentially awarding the relief that they had requested. It is a claim in the litigation as opposed to the example that I gave Judge McMillan was, the same day we were arguing the contempt, there was also cross motions to compel. If you grant a motion to compel today, that's not subject to 304A, so we're not going to tell you that we don't have to comply with that order, but that's because it's not subject to 304A. The reason that the attorney's fee order in February was is at least in part because that is a claim in the litigation that they are making for their attorney's fees. And we're proceeding on Friday. The second summary judgment argument on Friday is about whether Section 155 entitles them to their attorney's fees in the coverage litigation. So we're drawing the distinction between orders that are subject to 304A and orders that are not subject to 304A. And the February order is subject to 304A because it was a claim in the litigation. And we cited several cases in our brief that talked about, I think it's, there's a footnote with, there's an Illinois Supreme Court case, and three of the college court cases that talk about attorney's fees cases as being subject to 304A. That's talking about the ripeness issue. And to me, you're conflating the issues of enforceability under 304A and an order that is capable of subjecting a party to a contempt finding. And I don't believe that the enforceability language contained in 304A applies in this situation where we're talking about whether or not the court's order of February of 2013 could subject a party to contempt. Because it's the equivalent to a discovery order. And you can't say, well, it's not an enforceable order under 304A. You know, certainly a party can't ignore a discovery order, can be held subject to contempt. So, you know, to me, the better argument for your client here is the nonspecificity of the February. We've got many arrows in our quiver as to why the contempt is wrong. I respectfully disagree and think that the 304A requirement does apply there. And in fact, when we attempted to appeal that, we attempted to amend our motion, our notice of appeal after the February orders came down, and the insured said, you can't appeal that because Rule 304A applies to that and there's no finding of no just reason for delaying enforcement or appeal. They took that position and then this court said, we're denying the motion to amend your notice of appeal because 304A applies and you didn't get your 304A findings. So the court's already said that 304A applies to the February orders with all respect, Justice Harris. But I do agree that there are other equally good reasons or even better reasons in your view as to why there shouldn't be any contempt here. There's just nothing to disobey for the reasons I've just said. That's with respect to the October orders. For contempt to apply, there has to be such a clear and specific order that it's susceptible to only one reasonable interpretation. The country has a reasonable interpretation that wouldn't require compliance here, and that is that this is at least a two-step process. You have to have a finding of liability and then the equivalent of a finding of damages. You have to have a hearing to determine whether the fees should be applied and what amount of fees there should be. And the cases that we cite in our brief, the Kaiser case for example, that says that the party seeking fees always bears the burden of presenting the evidence that the court can consider to determine whether the fees are reasonable. So the court has to have a consideration of that. That didn't take place here. This court's GMC case recognized that there was a two-step process. Now that was in a specific regulatory context, but it recognized the two-step process. The Charos case, the appellate court remanded for a hearing on whether the fees were reasonable or not and on the amount of the fees. But even the cases of the insurance site, the Murray case, country mutual versus Murray, in that case the appellate court said there needed to be a hearing to determine the amount of the fees. And in the China Ocean Shipping, we refer to it as Costco case, there was a fee petition that the other side didn't bother to substantively respond to. So the trial court said we don't need to have a hearing on this, but I have to review the fees and make a determination of reasonableness. So there's another step that is out there. And it was reasonable to believe that with respect to the October orders. Another arrow that we have is that if you're going to be held in contempt, you have to willfully disobey. And if you don't believe, if you reasonably don't believe, I can't, you know, if you just are crazy about something, that doesn't count. But if you have a reasonable basis for disbelieving that you're doing something wrong, then you're not willfully disobeying. If I don't know that I'm doing something wrong and I'm not saying, hey, I know that I'm supposed to do that, but I'm not going to do it. That isn't what happened here. The country had a view as to why it was reasonable to believe that it wasn't required to do something at this point. The nonspecificity of the order in terms of what was required, the lack of a 304A finding, the fact that the judge said she needed to take things off in order for a country to have to pay when she issued the February order, all of those things made it reasonable for us to think that we weren't disobeying the order. Now it turns out the judge thought we were wrong about that, but we were reasonable in doing it. We weren't foaming our nose at the judge. We weren't flouting her authority. It was just, you can be wrong without being willfully disobedient. Well, I'm having trouble figuring out how she even entered an order requiring a country to pay before she had a hearing on whether it was vexatious and unreasonable to deny coverage. Justice Pope, that was part of the argument at the contempt hearing, and it was part of the argument at the February order hearing. I mean, after the fact she found you willfully, but that was in relation to failing to pay the attorney's fees, not the initial issue of were you vexatious in denying coverage. And she couldn't have done it. Because you didn't have a hearing on it. We didn't have a hearing, and if we had a hearing, it could only have come out one way. By the time she issued the contempt order, this court had already ruled that the order holding us responsible for the October, the underlying fees, had been reversed. So a bona fide dispute is an absolute defense to a violation of Section 155. So you can't be vexatious and unreasonable if there is a bona fide dispute. And absent that, you can't even be ordered to pay their fees in the coverage action. Am I right? That's correct. And Section 155 doesn't apply to the February orders. Section 155 is a statute that was passed in derogation of the common law rule, the American rule, that each side pays its own. So it has to be strictly construed. We have to look at what the scope of Section 155 is. And it says, it applies to, only one of the three situations that is even close here is liability under the policy. The liability under the policy was the October orders. It's not the February orders. So if 155 can't be used to apply to the February orders, which were fee shifting, it can only be used to apply to the October orders. We've got an absolute defense by this Court's finding of a reversal in the October orders, no application of 155 to the February orders. So there couldn't have been an award of 155 fees in this case. But it wasn't, just going back, it wasn't a reasonable, the order didn't require us to do anything specific. And the February orders are the same way. Everything I'm about to say that I've said to you so far about the October orders applies in spades with the February orders. We were not consummations in doing this. The arguments that were made were legitimate. We moved for rehearing on the issues. We moved for a stay. We appealed this. Those are steps that Illinois law provides us as a result of having a ruling against us. We just followed those. That's not consummations. We didn't embarrass, hinder, or obstruct the Court's administration of justice. We didn't lessen the dignity of the Court. There was nothing consummations that happened here at all. It was just the actual hard-fought litigation between two sides that had been going at each other for quite a while. Thank you. You'll have additional time later, probably. May it please the Court. I'm Rick Wilderson. I'm the attorney-in-law of Jennifer Martin for the defendants Hilltop View and PSM, Professional Swine Management, who own and operate a swine production facility in Scottsdale County. I'm kind of jumping maybe directly to the case. I think Justice Harrison's hit it exactly on the head of what this is about. You all were trial court judges, and I think you probably experienced the things that Judge McMillan is facing in this case. She entered an order on October 12th that the plaintiffs had to provide a defense. And on the specificity issue, the only thing that providing a defense would require is paying for the cost of the defense. So in essence, it is specific to that extent. And immediately after that order, the defendants asked the country to provide the defense and resupplied them with bills and statements that they declined to do. It refused to do it. Mr. Wilderson, did you attach any time records? My reading of the record looked like you sent a bill or somebody did, maybe it was Ms. Martin, for $176,000. Were there time records attached to that? I don't believe on that, and Judge, that bill was for the underlying case. I think ultimately Judge McMillan said that they didn't have to pay it up. We're going to stay that and not pay attention. On the subsequent one, there were specified bills. I don't know if they're in the record. There were bills, but it seemed to me that they were summary bills. There were no time records attached that I could find. But there is a, there are cases, and I think we cited one, that the paying bills are prime trace evidence that they are fair and legitimate and reasonable. Those bills had to be paid because those were our clients who were paying us to do the services that we were performing. Can I ask you one other question, and then I'll let you get into your argument? It seemed to me she stayed the litigation in the underlying case and said because of that we're not going to have to worry about the cost of defense there. But then in the contempt order, she found country in contempt for not paying the cost of defense in the underlying case. I don't think that, I'm not sure the order says that, but that wasn't her intent. I don't think it was your intent. No. But I think if you look back at the order, and I haven't looked at it for a while, I believe she did. Well, because she has that language that they take up the issue, which I think she meant she wasn't going to order that to be paid at that time. The bills had been $176,000 in the underlying case. As to, again, there are a number of trial case management orders, for example, 219 discovery orders, even summary judgments. Orders entered by trial courts have to be in writing. They have to be enforceable to the extent you can't just ignore them. And that's what was going on here. They ignored, didn't do anything in response to the October 12th hearing. Then in the February 23rd hearing, which was on their motion to stay, the judge did do a weighing of the hardships. And I think even going to the consummatiousness and vexatiousness, she did there say that, and there was evidence presented, that our clients were on the verge of bankruptcy. Because of the, I don't want to say antics, but I guess I will, of country mutual, by filing numerous motions, and I think it's illustrative of Judge McMillan's frustration when she said, we're spinning our wheels in a morass. And after a year, they're still refusing to do anything. On the February 23rd orders, they didn't file those motions. They didn't do anything. They didn't ask for clarification. They just ignored it. At the time of Judge McMillan entering the February 2013 orders, had she been presented with any amounts that were going to be claimed as costs? Or did she just make this statement in her February 21st order, country mutual is responsible for costs of coverage with regard to this case only, without having benefit of any numbers? I don't believe she had any benefit of any numbers. So subsequent to the entry of that order, I mean, could you have sent a letter saying $500,000, a million, and the failure to pay would have subjected the country to contempt? Well, I think we all have to assume reasonable and fair play going on here. And again, when they say, when she orders that they're to provide defense, what that means is to pay the legal fees and costs. She mentions in her contemporary there wasn't anybody challenging the reasonable and self-reliance. At that time, we had submitted bills to the plaintiff's side, and nobody contested them. Nobody said there was anything wrong with them. They just weren't going to pay them. Didn't want to pay them. Refused to pay them. So I don't know if Judge McMillan had them. They had been exchanged among the parties, and there wasn't any real question about the reasonable and self-reliance charge. And again, they haven't paid, so there is this presumption that they are reasonable. Mr. Wilberson, I've got from the appendix the order on the adjudication of civil contempt from December 2013, and numbered paragraph 2, the order says, country has willfully failed to comply with this court's opinion and order, and separate order entered on October 26, 2012, which held that country was responsible for the insurance defense and the underlying litigation. So she's finding willful noncompliance with an order that she had stayed. Isn't that true? That order was stayed, and she said, we're not going to worry about paying those costs at this point in time. Yeah, but the October 12 order was a little broader. Her initial order said provide defense in this case. It actually, I think, covered both cases, the underlying case and the effect of our judgment action case. The underlying case was later stayed, yes. So I'm sure that that's inconsistent if I'm answering your question. But again, back to our initial thing, I think in order to keep the case moving as a matter of case management, Judge McMillan entered those two orders, neither of which were in line, but we were therefore forced to file our motion to compel. And she ultimately felt the same way. She thought it was enforceable. We thought it was enforceable. And I think, again, there is a lot of confusion that I think the points are potentially based on appealability versus enforceability. I don't think it's a wrong to state that every non-appealable order is also non-enforceable. I don't know if that's what you're talking about. That's just a paraphrase of what we mentioned earlier. There are a whole myriad of inter-case orders, custody, maintenance. What about their argument, though, that when they tried to appeal from that order, your side made the claim that they needed to have a 304A finding before they could appeal? But that's different than whether or not it is enforceable. That's what we are saying. It still is enforceable. The other thing I wanted to ask you about, too, was whether or not you agree that in the DEC action, there had been no hearing on whether Country was vexatious and unreasonable in denying coverage. That's true, other than the hearing on the motion to stay, where there was some discussion about this balancing hardships, where she found that they were, in essence, pushing us to a point, or our clients to a point where they were going to be in default, if you can use that word. My question to you is, on what basis, then, could she order keys to be paid in the DEC action without a finding that there was an unreasonable and vexatious failure to provide coverage? Those words were not used. Again, I think their conduct was unreasonable and vexatious. But she didn't have a hearing on that issue, did she? No, she didn't. But when she made the finding in contempt of it, she's talking about their conduct at that time, back in February and in October, in ignoring her orders. That's a different issue, though. What I'm trying to get at is, substantively, without a hearing and a finding that they engaged in vexatious and unreasonable conduct and denied coverage, would they even owe fees? She had ordered them to pay the fees. But on what basis is what I'm getting at? Because they had unreasonably, willfully ignored her two prior orders. And they knew the amount that was due. They had been given the bills. All they had to do was comply with her orders, which they refused to do. Well, to me, there's a difference in saying they willfully refused to obey her orders versus they willfully refused to provide coverage when it was clear coverage was owed, which would trigger your right to an attorney's visa in the first place. Yeah. In any event, we believe that the rulings by Judge McMillan were, should be, there was willful failure to comply with the Act of the Twelfth Order to provide a defense which, by case law, includes the payment of costs and fees. They willfully failed to comply with the February 2013 orders. Those findings were not against the manifest way of the evidence. We believe that her finding that they were vexatious and unreasonable was also not against the manifest way of the evidence at the time. Because of the fact that they had existed on the prior occasions. Those words, by the way, were put in that order. And that order was circulated to the plaintiffs. It ended up being the way it is. They didn't really object to it. They could have had a hearing on that if they wanted to. But the order was entered by the judge. We did draft it, but it was circulated for review prior to its entry. Just addressing a little bit Mr. Hannon's arguments about the fact that they didn't think they had to follow the order. Well, they've re-excited cases and there are, even if the order is erroneous, you still have to follow it. Unless it's just bullied by the court not having jurisdiction on such a matter. First, where it might, where it would be, then you would have to follow it. Even if it's wrong, you still have to follow it. Even though this court reversed part of the case, that doesn't change it either. We've cited cases in our briefs that you still have to. The order of the contemporary still stays in effect even though the underlying original order of providing defense was partially reversed by this court. So, all in all, I think it comes down to the plaintiff believing they didn't have to follow the court's orders. And the court taking the best action she thought at the time to try to make them follow her orders, to try to keep the case moving. Again, our clients were experiencing financial hardship. That was brought up at that February 23rd. It was due to the conduct of the plaintiffs. And the courts have inherent powers to enforce their orders and they have to be followed. I mean, otherwise it's just chaos. Again, you and all those former trial judges, I'm sure, would expect your orders to be followed. There's only so much you can do if they don't follow, one of which is to That's what finally happened. We would ask this court to affirm the orders as they are. Thank you. Thank you. We vote. I found the footnote I was referring to. It's footnote 9 on page 30 where we cite several cases that talk about the claim for attorney's fees as being subject to the rules. Supreme Court Rule 304A. That's in our open brief. And counsel, just on that part of it. The cite in the brief was to General Motors Corporation, a fourth district case in 2005. And it's talking about the pellet review of an award of attorney's fees. And it says to the ripeness issue as opposed to the enforceability. Excuse me. Let me not use that word. The capacity of an order to subject a party to contempt. Those two are, we're mixing apples and oranges here. Well, with all respect, Your Honor, what we're saying there is that we, because of that rule that you talked about with GMC and cases like that, we thought that there was a second step that was required. We're not saying that that case established anything about contempt. We're just saying that case says that there's a second step going on here. You have to have the determination of the amount of fees before that order becomes final. So we thought there wasn't a final order that could be enforced against us. If you can't appeal something, it's a violation of due process to enforce it against you. Well, this is, and I don't want to belabor this, but an order compelling a party to give a deposition, you're saying that that order has to have a 304A finding before it could subject the party to contempt for failing to do that? No, because that's not subject to 304A. That's not a claim in the litigation. It's an interlocutory order, though. But we're talking about interlocutory. A claim in the litigation means it's in their complaint, their counter-complaint, their cross-complaint. For two of us, right? No, we're arguing on Friday their 155 argument, their summer judgment on their 155 claim, saying that we were vexatious and unreasonable, and they're entitled to attorney's fees on that. Let me give you some background on the February orders. After the October orders came down, there was a petition that they filed to enforce those orders. They wanted further relief and said, okay, the country said they don't think these are final and they don't think they're enforceable, so we want you to issue a second order specifying that they have to pay. In light of that, we said, we don't agree with that, but out of an abundance of caution and given their position, we would like to have a motion. We filed a motion to stay in this, and we said we want to be able to appeal this and take it out if you don't grant our motion for reconsideration, so give us a 304A fine. We also said, we will put the money that you tell us is appropriate into the registry of the court. We weren't trying to hang onto the money and gain interest on it or anything like that. We were willing to put it into the registry of the court. We just didn't want to put it in their hands because under the Supreme Court's general agents case, if we had given them the $177,000 that they requested and then went up on appeal and you did what you did and reversed it and we'd gone back to them and said, hey, we'd like our $177,000 back, they'd have said, hey, general agents, we don't have to give that money back to you. It's ours to keep. So we said, let's put it in the registry of the court where we can get it back, and we were trying to use judicial process to ensure that we wouldn't be irreparably harmed by losing that money. The court said, all right, I hear your concern about that, so I'm going to relieve you of your obligation of responsibility in this by not taking it up. And she said, the other side said they can't afford to fight a two-front war. They're fighting the underlying case and they're fighting the coverage case. So I'm going to make you pay their coverage fees. Well, that was overkill because she only removed one front. They were only fighting a one-front war, and it was wrong as a matter of law in any event because the Illinois law on insurance is that an insurance company, the Martin case, Supreme Court Martin case, the insurance company is allowed to say we will not defend and follow declaratory judgment action. So by definition, if we're not defending, they have to pay their own fees in the underlying case, and by definition, they have to pay their own fees in the coverage litigation. So Illinois law contemplates that that is a reasonable way to proceed, that is a legitimate way to proceed. But the judge was trying to deal with that. So that's how we got to that point. But there were no bills that were presented to us. There was a colloquy between me and Judge McMillan where I said, all right, well, how much are we supposed to pay? She said, I don't know, you've got the bills. And I said, no, we don't have the bills. And she said, okay, don't pay it then. I said, well, we'd like to try. And it just was never presented to her. And Mr. Wilderson just said that we didn't do anything in response to the October order. We filed a motion. We opposed the petition to enforce. We filed a motion for stay. We filed a motion for reconsideration. We filed a request for a 304A finding. We filed a notice of appeal. We appealed it. We got it reversed. We did a lot in response to the October orders. The bill part, the February order was only about coverage action fees. It did not include both of those. I'm sorry, Your Honor. I didn't see you. Changed your mind. I apologize. Thank you for your time. Thank you. We'll take this matter under advisement. Stay in recess until 1 o'clock.